## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CATHEXIS VENTURES, LP,
JOAQUIN ALEX FERNANDEZ,
THOMAS ALEX NEWTON, JR.,
PAGE ANGEL INVESTORS II, LLC,
GEORGE LAFLIN,
KEVIN MINOR,
WE HANG, GP, and
SHADAYSHA, LLC

    Plaintiffs,

  v.

MIQROTECH, INC. and
MEADE LEWIS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

COMPLAINT AND JURY
TRIAL DEMAND

## COMPLAINT

Plaintiffs Cathexis Ventures, LP ("Cathexis"), Joaquin Alex Fernandez ("Fernandez"), Thomas Alex Newton, Jr. ("Newton"), Page Angel Investors II, LLC ("Page Angel Investors"), George Laflin ("Laflin"), Kevin Minor ("Minor"), We Hang, GP ("We Hang"), and ShaDaySha, LLC ("ShaDaySha") by and through their undersigned attorneys, for their Complaint against Defendants mIQroTech, Inc. ("mIQroTech" or the "Company") and Meade Lewis, allege as follows:

## INTRODUCTION

1. Between 2020 and 2021, Meade Lewis, the founder, Chief Executive Officer, director, and majority shareholder of mIQroTech—a technology start-up in the oil and gas industry—fraudulently raised millions of dollars from Plaintiffs

Cathexis, Fernandez, Newton, Page Angel Investors, Minor, We Hang, and ShaDaySha (together, the "Series A Investors") by making false and misleading statements about the Company's business.  Specifically, Lewis and mIQroTech misled the Series A Investors by making false statements regarding the Company's financial performance, the number of customers the Company had, the existence of an additional marquee investor, and the extent to which mIQroTech's product was developed and deployed in the field.

2.     Defendants made these false and misleading statements in written materials provided to investors and in oral communications that Lewis had with the Series A Investors, which the Series A Investors relied on when they invested millions of dollars in the Company.

3.     Among other things, as part of Defendants' marketing and solicitation efforts to get the Series A Investors to invest in the Company, Defendants provided the Series A Investors with pitch decks and purported financial information about the Company filled with false representations and misleading statements.

4.     In reliance on these materials and Defendants' other representations, the Series A Investors ultimately invested over $7 million in the Company and collectively acquired an ownership stake that was represented by Defendants to be approximately 17% in the Company.  Laflin likewise relied on these materials and

Defendants' other representations when he exercised options to purchase shares in the Company in September 2021.

5.      Defendants' scheme unraveled in October 2021, after it became clear that many of their statements and representations to investors were not true. Confronted with this fraudulent misconduct, Lewis confessed and admitted to making false and misleading statements to investors to induce them to invest in the Company.  Specifically, on or around November 4, 2021, Lewis prepared an apology to investors and confessed to making false statements regarding the Company's financial performance, customers, investors, and operations.

6.       In light of Lewis's admitted fraud, on November 12, 2021, the Series A Investors demanded that Lewis step down immediately from his management role with the Company.   Cathexis also sought accurate information regarding the Company's finances, including its balance sheet and income.  Lewis refused to step down, and Defendants rebuffed the request for financial information.  To date, Lewis continues to maintain the charade of a successful tech start-up with revenues, customers, and a viable product that the Company simply does not have in a way that continues to harm the Series A Investors and damage the Company.

7.      Defendants have committed fraud and negligent misrepresentation, and the Company has breached the Series A Preferred Stock Purchase Agreement (the "Purchase Agreement") and Investors' Rights Agreement (the "Investors' Rights

Agreement"), both dated November 30, 2020, that the Company entered into with the Series A Investors.

8.     The allegations in this Complaint are based on information currently available to Plaintiffs, and further information may uncover additional misstatements and/or fraudulent conduct by Defendants.

## PARTIES

9.     Plaintiff Cathexis is a leading venture capital firm based in Houston, Texas.  It is a Texas limited partnership with its principal place of business at 1000 Louisiana Street, Suite 7000, Houston, Texas 77002.  Cathexis's limited partners are the William Bruce Harrison Exempt GST Trust, the William Bruce Harrison/DJH, Jr. Trust, and the G4A Trust.  William Bruce Harrison Exempt GST Trust is a Texas trust.  Its trustees are Harrisburg Equitable Management, LLC and William Bruce Harrison.  Harrisburg Equitable Management, LLC's sole member is William Bruce Harrison.   William Bruce Harrison is an individual who is domiciled and has a permanent home in San Juan, Puerto Rico.  William Bruce Harrison/DJH Trust is a Texas trust.  Its trustees are Harrisburg Equitable Management, LLC and William Bruce Harrison.   The G4A Trust is a Texas trust with one trustee, Harrisburg Equitable Management, LLC.

10.     Plaintiff Page Angel Investors II, LLC is a Texas limited liability company with its principal place of business at 1514 Marshall Street, Houston, Texas

77006.  Its members are: Jonas Georgesson LLC, whose members are Andrea and Jonas Georgesson, both of whom are domiciled in Texas, where they keep permanent homes; Charlie Shanor, who is domiciled in North Carolina, where he keeps a permanent home; Charlie Snider, who is domiciled in New Mexico, where he keeps a permanent home; Stephen Newton, domiciled in Virginia, where he keeps a permanent home; Nathan Shanor, domiciled in New York, where he keeps a permanent home; and David Dickey, Thomas Alex Newton, Jr., Michelle Newton, Anna Landry, Rojesh Bhalla, William LeSage, Mario Rodriguez, George Laflin, Malcom Waddell, Timothy Teuscher, Patti Melcher, Miguel Loya, Stephen High, and Leland Putterman, all domiciled in Texas, where they keep permanent homes.

11.    Plaintiff Joaquin Alex Fernandez is an individual who is domiciled in Texas.  He keeps a permanent home at 7105 Claybrook Drive, Dallas, Texas 75231.

12.    Plaintiff Thomas Alex Newton, Jr. is an individual who is domiciled in Texas.  He keeps a permanent home at 13707 Crickett Hollow Dr., Houston, Texas 77069.

13.    Plaintiff Kevin Minor is an individual who is domiciled in Texas.  He keeps a permanent home at 3426 Onion Creek, Sugar Land, Texas 77479.

14.    Plaintiff ShaDaySha, LLC is a Texas limited liability company with its principal place of business at 350 Pine Street, Suite 320, Beaumont, Texas 77701. Its members are three Texas trusts, the Scott A. Shaver 2015 Trust, the Claire Shaver

Day 2015 Trust, and the D. Blake Shaver 2015 Trust.  The Scott A. Shaver 2015 Trust has one trustee, Scott A. Shaver, an individual who is domiciled and has a permanent home in Houston, Texas.  The Claire Shaver Day 2015 Trust has one trustee, Claire Shaver Day, who is an individual domiciled and has a permanent home in Houston, Texas.  The D. Blake Shaver 2015 Trust has one trustee, D. Blake Shaver, who is an individual domiciled and has a permanent home in Houston, Texas.

15.     Plaintiff We Hang, GP is a Texas general partnership with its principal place of business at 2727 Allen Parkway, Suite 1500, Houston, Texas 77019.  Its partners are Richard R. Nelson, III, Jeffrey D. Williams, ShaDaySha, LLC, Matthew A. LeBlanc, and Stephen K. Newton.  Messrs. Nelson, Williams, LeBlanc, and Newton all reside and are domiciled in Texas, where they keep permanent homes.

16.     Defendant mIQroTech is a Delaware corporation with its principal place of business at 328 S Riverhills Drive, Temple Terrace, Florida 33617.  MIQroTech's principal place of business has also been 14059 Riveredge Drive, Condo 9303, Tampa, Florida 33637.

17.     Defendant Meade Lewis is the Chief Executive Officer of mIQroTech, director and Chairman of the mIQroTech Board of Directors, and the majority shareholder of the Company.  He is domiciled in Florida and keeps a permanent

home at 328 S Riverhills Drive, Temple Terrace, Florida 33617.  Lewis previously resided at 14025 Riveredge Drive, Condo 9303, Tampa, Florida 33637.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action involves a controversy between citizens of different states for an amount exceeding $75,000.  Plaintiffs' damages are for an amount to be determined at trial but at this time are believed to well exceed $75,000, exclusive of interest and costs, and not including punitive damages.

19.     Plaintiffs are citizens of Texas, Puerto Rico, North Carolina, New Mexico, Virginia, and New York.  Defendant Lewis is a citizen of Florida, and Defendant mIQroTech is a Delaware corporation with its principal place of business in Tampa and Temple Terrace, Florida.

20.     Venue is proper in this district based on 28 U.S.C. § 1391(b)(2) because a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in this district.  On information and belief, and unless otherwise noted below, Defendant Lewis acted at all relevant times from his residences in Tampa and Temple Terrace, Florida, which also served as the Company's principal place of business.

## FACTUAL ALLEGATIONS

### A.  Defendants Raise Over $10 Million from 2017 through 2021

21.    Lewis founded mIQroTech in or around 2017 as a private technology start-up that was developing an "all-in-one device" using artificial intelligence to monitor oil and gas pipelines.  The technology was designed to predict pipeline leaks before they occur, which would result in significant cost savings to oil and gas companies and prevent environmental damage.

22.    Defendants pitched their patented product as having several inferior substitutes but no true competition, as mIQroTech's device could uniquely monitor seven variables: corrosion, pressure, density, vibration, temperature, location, and acoustics.  Defendants emphasized that the oil and gas industry, with over 2.7 million miles of pipeline in the United States alone, suffered over $90 billion in lost revenue every year—a problem Defendants claimed they could address once their product was successfully deployed.

23.    As a start-up, Defendants needed to solicit investment capital to fund the Company's development and growth.  To that end, Defendants aggressively marketed the Company to potential investors, including in connection with a Series A funding round beginning in 2019 or 2020.  As part of Defendants' marketing and fundraising efforts, they prepared financial information, and pitch decks that contained financial information, to present to prospective investors.

24.     From 2017 through 2021, mIQroTech raised over $10 million in initial seed funding and in connection with a Series A funding round.

25.     On information and belief, Defendants began soliciting investors for the Company's Series A funding round beginning in 2019.

26.     Ultimately, Defendants raised over $7 million from the Series A Investors in 2020 and 2021 as part of the Series A funding efforts.

**B.     Defendants Solicit Over $1 Million From the Series A Investors in November 2020 Through False and Misleading Statements**

27.     In or about January 2020, Defendants received early seed funding from George Laflin, the president of Page Angel Investors, as a personal investment.

28.     Throughout 2020, Defendants had further communications with Laflin and sought further investments from him and Page Angel Investors in the Company's Series A funding round. During this period, Defendants made numerous false and misleading statements—in both written and verbal communications—to solicit and induce Page Angel Investors and its members, including Laflin and Newton, to invest in the Company.

29.     As set forth below, Page Angel Investors ultimately relied on Defendants' false and misleading statements when it elected to invest in the Company in November 2020. While Newton did not invest at this time, he also relied on Defendants' false and misleading statements from this period when he later invested in the Company in February 2021, as set forth below.

## 1. Defendants Misrepresent mIQroTech's Financials

30.     While pitching mIQroTech to Page Angel Investors in 2020, Defendants repeatedly misrepresented the Company's financial performance. Lewis also intentionally or recklessly overstated the Company's future revenue prospects.

31.     For example, on October 9, 2020, Defendant Lewis emailed Laflin a "Pitch Deck" (the "October Deck"). On November 30, 2020, Lewis also provided Laflin a one-page summary of the Company's "Profit and Loss" for the period of January to November 2020 (the "2020 P&L Statement"). Defendants provided the October Deck and the 2020 P&L Statement to Laflin to solicit Page Angel Investors' investment in the Company as part of the Company's Series A fund raising. To this end, Laflin shared the October Deck with Newton on or about October 12, 2020 and the 2020 P&L Statement with Newton during the same period.

32.     In the October Deck, Defendants represented that mIQroTech was currently billing $3.9 million in annual recurring revenue and that mIQroTech's "Actual" revenue for 2020 was $6.2 million.

33.     However, these statements in the October Deck were false and misleading. On information and belief, mIQroTech's revenue in 2020, as of October, was not $6.2 million. Indeed, on information and belief, the Company had little to no revenue by that point in 2020. Similarly, on information and belief, the Company did not have billings of $3.9 million at the time.

34.     The October Deck also stated that the Company "expected" 2021 revenue of $22 million.  Lewis repeated this inflated projection to Laflin in discussions, representing that the Company expected revenue of $22 million in 2021 consistent with the projections in the October Deck.

35.     However, on information and belief, this projection was baseless.  In fact, on information and belief, Defendants knew, or were reckless in not knowing, that the Company would not be able to achieve that level of revenue in 2021.  Indeed, in November 2021, Lewis acknowledged that the Company had not been able to bill any revenue in 2021.

36.     Lewis also misrepresented the Company's financial results in discussions he had with Page Angel Investors.  Specifically, on or about October 13, 2020, Lewis discussed the October Deck with Laflin.  During that discussion, Lewis represented that mIQroTech's actual revenue in 2020 was $6.2 million.  Lewis further represented that the Company was currently billing $3.9 million in annual recurring revenue.  On information and belief, both of these statements were false and misleading, as the Company did not have revenues anywhere near $6.2 million in 2020 and the Company was not currently billing customers anywhere near that amount in annual recurring revenue.

37.     The purported financials in the form of the 2020 P&L Statement that Lewis provided to Page Angel Investors, Laflin, and Newton were also materially false and misleading.

38.     The 2020 P&L Statement stated that the Company had generated income during the period between January and November 2020 from six clients— consisting of Acciona, Chevron, Delek, Equitrans, Marathon, and Phillips 66—in a total amount of $4,127,050.  On information and belief, this was false.  In fact, on information and belief, mIQroTech generated little to no income from these clients in 2020, and certainly not income in the amount of $4,127,050 as represented in the 2020 P&L Statement.

39.     When questioned about the representations in the October Deck and the 2020 P&L Statements regarding the Company's financial performance, Lewis initially attested to the accuracy of the numbers.  As discussed below, it was only later that Lewis admitted that these representations regarding the Company's financial performance were false.

## 2.  **Defendants Misrepresent mIQroTech's Customers**

40.     While raising funds from Page Angel Investors in 2020, Defendants also misrepresented the size of mIQroTech's customer base.

41.     For example, in the October Deck, Defendants represented that Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US

were all "Paying Customers."  Given that the Company was in its early stages of development, having paying customers was a critical part of the Company's business development.  Thus, information about the Company's customers—including who they were and the number of customers—was a material part of investors' assessment of the Company and represented important information that Page Angel Investors relied on when assessing its potential investment in the Company.  On information and belief, the representations regarding "paying customers" in the October Deck were false.  On information and belief, Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were not paying customers of mIQroTech in October 2020.

### 3. Defendants Misrepresent That Chevron Invested in the Company's Series A Round

42.     Defendants also falsely represented that Chevron had invested in mIQroTech.  For example, Defendants represented in the October Deck that Defendants had "secured over $4,000,000" in funding in the Company's Series A raise, including from Chevron.  Lewis also specifically told Laflin on multiple occasions that Chevron had agreed to invest in the Company as part of the Company's Series A raise.

43.     In reality, and on information and belief, Chevron was never a Series A investor in the Company, and Defendants had not "secured" a financial investment

from Chevron.  Indeed, Lewis admitted to Laflin on a call that took place on or about November 5, 2021 that Chevron never invested in the Company.

44.    At the time Defendants made these representations about Chevron's investment, Defendants knew, or were reckless in not knowing, that they were false and misleading.

45.    These false and misleading statements about Chevron investing in the Company were also material.  Chevron is a "super major" oil company, one of the largest and most sophisticated oil and gas companies in the world.  To the extent Chevron had determined to invest in the Company, that provided an imprimatur of legitimacy to the Company and its business prospects.  Indeed, given Chevron's stature in the oil and gas industry and its record of venture capital investment, Defendants made these misstatements for the purpose of inducing Page Angel Investors and other investors to invest in the Company under the false pretense that Chevron had already vetted mIQroTech and determined it was a good investment. And Page Angel Investors did rely on those representations about Chevron, in addition to the other representations referenced in paragraphs 31-32, 34, 36, 38-39, 41-42, 47-48, 50 and 53, when Page Angel Investors invested in the Company.

### 4.  Defendants Misrepresent mIQroTech's Product Roll Out

46.    While raising funds in 2020, Defendants also misrepresented the status of mIQroTech's product development and roll out.

47.    On or about October 16, 2020, Lewis represented to Laflin that the Company's product was operational and implemented in the field on customers' oil and gas pipelines.  Lewis further represented that the Company would be further deploying its product to customers in the field in 2021.  For example, Lewis represented that Marathon was adding the Company's product to 1,200 miles of customers' pipelines by the first quarter of 2021.  He also represented that Marathon was likely going to deploy the Company's product on thousands of miles of Marathon's pipelines by the end of the year 2021.  He also represented that Phillips 66 was adding the Company's product to hundreds of miles of pipeline.  He further represented that Chevron had implemented the Company's product on at least 100 miles of pipeline.  On information and belief, these statements were false, and Defendants knew, or were reckless in not knowing, that the Company had not deployed (and was not deploying) its product with these customers in this manner.

48.    On October 26, 2020, Lewis emailed Laflin a template to use when reaching out to other potential investors.  In the proposed template, Lewis wrote that mIQroTech's product was "currently deployed with Chevron and a number of other super-majors."  By representing that the product was being used by Chevron and other significant customers in the industry, Defendants sought to create the illusion that the product was much more widely used and successfully deployed on actual pipelines than it actually was.  Particularly where the Company's business model

was built around charging customers for their use of the product, representations regarding the feasibility and use of the product by customers were material and important to potential investors.

49.     These statements were false and misleading.   On information and belief, the Company did not have its product deployed with Chevron or any other "super-major" oil and gas company in October 2020.

50.     Defendants also misrepresented the amount of data the Company was collecting from customers.   Specifically, in the October Deck, Defendants represented that mIQroTech was collecting hundreds of millions of data points daily from its devices in the field.

51.     Part of the Company's business model purported to rely on collecting and monetizing customer data, and therefore representations concerning data collection were material to prospective investors.

52.     In reality, and on information and belief, mIQroTech had not yet developed a viable product.   Additionally, its devices were not deployed in any material sense with Chevron or any other major oil company.   The Company also was not collecting hundreds of millions of customer "data points" on a daily basis as described in the October Deck.

53.     The October Deck further represented that, by "January of 2021, mIQroTech will be generating 1.2 billion data points every single day."   However,

on information and belief, Defendants had no reasonable basis to expect that level of data collection by January 2021.  At that point, the Company had collected little to no customer data and had no realistic estimate as to when it would have a viable product.

### 5. Page Angel Investors Invests in the Company in Reliance on Defendants' Misrepresentations

54.    In reliance on Defendants' representations in the October Deck, the 2020 P&L Statement, and the other written and oral discussions between Defendants and Page Angel Investors referenced in paragraphs 31-32, 34, 36, 38-39, 41-42, 47, 48, 50, and 53, on or around November 30, 2020, Page Angel Investors invested in the Company by purchasing 211,089 shares of Series A Preferred Stock for $1,036,450, pursuant to the Purchase Agreement.  The Purchase Agreement contains a number of representations and warranties.  Under Section 2.14 of the Purchase Agreement, mIQroTech was required to provide Page Angel Investors with accurate financial information regarding the Company, including "a profit and loss statement for the period ended September 30, 2020" that "fairly present[s] in all material respects the operating results of the Company . . . ."

55.    However, the only profit and loss statement provided to Page Angel Investors was the 2020 P&L Statement, which, as explained above, did not fairly or accurately present the Company's operating results.

C.   **Defendants Solicit Over $1.5 Million in February and March 2021 From the Series A Investors Through False and Misleading Statements**

56.    Defendants' misrepresentations regarding mIQroTech's financial performance, customers, investors, and operations continued in the period immediately after Page Angel Investors' initial Series A investment.

57.    In late 2020 and continuing into early 2021, Defendants had communications with Cathexis, Fernandez, and Page Angel Investors and sought their participation (and further participation) in the Company's ongoing Series A funding round.

58.    During this period, Defendants made numerous false and misleading statements—in both written and verbal communications—to solicit and induce Cathexis, Fernandez, and Page Angel Investors to invest in the Company.

59.    As set forth below, Cathexis, Fernandez, Newton, and Page Angel Investors ultimately relied on Defendants' false and misleading statements when they elected to invest in the Company in February and March 2021.

1.   **Defendants Continue to Misrepresent mIQroTech's Financials**

60.    While pitching mIQroTech to Cathexis, Fernandez, and Page Angel Investors, Defendants repeatedly misrepresented the Company's financial performance and future revenue prospects.

61.    For example, on February 10, 2021, Defendant Lewis emailed Mark Friday, Cathexis's head of venture capital investing, a "Pitch Deck" dated February 3, 2021 (the "February Deck").  Lewis sent the same deck to Laflin on or about February 3, 2021.  Fernandez received the same deck on or about March 3, 2021.

62.    On February 10, 2021, Lewis also provided Friday a link to the Company's "Financials," which included the 2020 P&L Statement Lewis had previously provided Laflin.

63.    Defendants provided the February Deck to Cathexis, Fernandez, and Page Angel Investors and the 2020 P&L Statement to Cathexis to solicit their investment in the Company as part of the Company's Series A fund raising.

64.    In the February Deck, Defendants represented that mIQroTech was currently billing $6.8 million in annual recurring revenue and that mIQroTech's "Actual" revenue for 2020 was $8.7 million.

65.    However, these statements in the February Deck were false and misleading.  On information and belief, mIQroTech's revenue in 2020 was not $8.7 million.  Indeed, on information and belief, the Company had little to no revenue in 2020.  Similarly, the Company did not have billings of $6.8 million at the time.

66.    Lewis also misrepresented the Company's financial results in discussions he had with Cathexis, Fernandez, and Page Angel Investors. Specifically, on or about February 10, 2021, Lewis told Friday on a phone call that

mIQroTech's actual revenue in 2020 was $8.7 million and that the Company was currently billing $6.8 million in annual recurring revenue.

67.     On or about March 2, 2021, Lewis discussed the February Deck with Fernandez and Laflin during a videoconference via Google Meets.   During that discussion, Lewis represented that mIQroTech's actual revenue in 2020 was $8.7 million.   Lewis further represented that the Company was currently billing $6.8 million in annual recurring revenue.

68.     And on or about March 13, 2021, Lewis discussed the February Deck with Laflin during a call.   During that discussion, Lewis represented that mIQroTech's actual revenue in 2020 was $8.7 million.   Lewis further represented that the Company was currently billing $6.8 million in annual recurring revenue.

69.     The February Deck also stated revenue of $22 million was "expected" by the Company in 2021.   However, on information and belief, this projection was baseless.   In fact, on information and belief, Defendants knew, or were reckless in not knowing, that the Company would not be able to achieve that level of revenue in 2021 for a host of reasons, including delays in development of the Company's product.   Indeed, in November 2021, Lewis acknowledged that the Company had not been able to bill any revenue in 2021 because it did not have a viable product.

70.     The purported financials in the form of the 2020 P&L Statement that Lewis provided to Cathexis and Page Angel Investors were also materially false and misleading.

71.     As noted above, the 2020 P&L Statement stated that the Company had generated income during the period between January and November 2020 from six clients—consisting of Acciona, Chevron, Delek, Equitrans, Marathon, and Phillips 66—in an amount of $4,127,050.  On information and belief, this was false.  In fact, on information and belief, mIQroTech did not generate income anywhere near this amount from these clients in 2020.

72.     When questioned about the representations in the February Deck and the 2020 P&L Statements regarding the Company's financial performance, Lewis attested to the accuracy of the numbers.

73.     For example, on February 19, 2021, Friday questioned Lewis about the discrepancy between the February Deck, which represented that the Company had $8.7 million in 2020 revenue, and the 2020 P&L statement, which reflected $4.1 million in Company revenue for the period of January to November 2020 (a difference of $4.6 million).

74.     In response, Lewis represented that the Company had received revenue in December 2020 that, on information and belief, it did not.  Specifically, Lewis represented that Phillips 66 had paid the Company $2.68 million in revenue in

December 2020 and that Chevron had paid the Company approximately $2 million in revenue.

75.     Lewis's statements were false and misleading.  Again, on information and belief, mIQroTech generated little to no revenue in 2020.  Moreover, on information and belief, mIQroTech did not receive $2.68 million from Phillips 66 or $2 million in revenue from Chevron in December 2020, contrary to Lewis' express representations to Friday.

### 2. Defendants Continue to Misrepresent mIQroTech's Customers

76.     While raising funds from Cathexis, Newton, Fernandez, and Page Angel Investors in early 2021, Defendants continued to misrepresent the Company's customer base.

77.     For example, in the February Deck, as in the October Deck, Defendants continued to represent that Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were all "Paying Customers."  As noted, the existence of actual customers using (and paying for) the Company's product was a critical part of the Company's business development.  Thus, information about the Company's customers—including who they were and the number of customers—was a material part of investors' assessment of the Company and represented important information that Cathexis, Newton, Fernandez, and Page Angel Investors relied on when assessing their potential investment in the Company.  On information and belief,

however, Defendants' representations regarding the Company's customers were false. In fact, on information and belief, Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were not paying customers of mIQroTech in February 2021.

### 3.  Defendants Continue to Misrepresent That Chevron Invested in the Company's Series A Round

78.  Defendants also continued to falsely represent that Chevron had invested in mIQroTech. For example, Defendants again represented in the February Deck that Defendants had "secured" funding in the Company's Series A raise from Chevron, similar to the representation in the October Deck.

79.  Defendants also continued to falsely represent that Chevron had invested in mIQroTech in communications with investors. For example, Lewis verbally represented to Fernandez that Chevron had invested in the Company. In addition, on March 5, 2021, Lewis emailed Fernandez and assured him that Chevron was the "last money in" and that the Company "had their forms signed."

80.  As referenced above, Lewis also specifically told Laflin that Chevron had agreed to invest $3 million into the Company. Lewis subsequently told Laflin that Chevron invested $2 million in the Company.

81.  In reality, and on information and belief, Chevron was never a Series A investor in the Company, and Defendants had not "secured" an investment from Chevron.

82.     At the time Defendants made these representations about Chevron's investment in the Company, Defendants knew, or were reckless in not knowing, that they were false and misleading.

83.     These false and misleading statements about Chevron investing in the Company were also material, given Chevron's stature in the oil and gas industry and the likelihood that investors would decide to invest in the Company under the false pretense that Chevron had vetted mIQroTech and determined it was a good investment.

### 4. Defendants Continue to Misrepresent mIQroTech's Product Development and Roll Out

84.     While seeking to raise funds in early 2021, Defendants also continued to misrepresent the status of mIQroTech's product development and roll out.

85.     For example, in the February Deck, Defendants continued to represent that mIQroTech was collecting hundreds of millions of data points daily from its devices.

86.     In reality, and on information and belief, mIQroTech's devices were not in operation in the field, and mIQroTech was not collecting the customer "data" described in the February Deck.

87.     The February Deck further represented that, by "January of 2022 mIQroTech will be generating 1.2 billion data points every single day." This was a year later than Defendants projected in the October Deck, and an acknowledgement

that the projections in the October Deck were wildly off.  But even the updated projections of data collection in the February Deck had no reasonable basis and were misleading.

88.    Defendants also touted the Company's ability to collect and monetize customer data, making their representations concerning the Company's current and projected data collection material to prospective investors.

89.    On information and belief, at the time Defendants were representing the scope of the Company's current and projected data collection abilities to investors, the Company had not yet developed a viable product.  Nor was the Company's product deployed in any material sense with customers.  The Company also was not collecting hundreds of millions of customer "data points" as described in the February Deck.

90.    Nor did Defendants have a reasonable basis to expect that level of data collection by January 2022, given that the Company had collected little to no customer data at that point and had no realistic estimate as to when it would have a viable product.

### 5. <u>Cathexis, Newton, Fernandez, and Page Angel Investors Invest in the Company in Reliance on Defendants' Misrepresentations</u>

91.    In reliance on Defendants' representations in the February Deck, the 2020 P&L Statement, and the other written and oral discussions with Defendants

referenced in paragraphs 64, 66-69, 71-74, 77-78, 80, 85, and 87, Cathexis and Page Angel Investors invested in the Company's Series A round.   Specifically, on February 23, 2021, Cathexis invested $250,002.47 in the Company, purchasing 50,917 Series A Shares pursuant to a February 23, 2021 Subscription Agreement. And on March 22, 2021, Page Angel Investors invested $810,002.69 in the Company, purchasing 164,970 Series A Shares pursuant to a March 22, 2021 Subscription Agreement.

92.    In reliance on Defendants' representations in the October Deck and the 2020 P&L Statement, Newton invested in the Company's Series A Round. Specifically, on February 24, 2021, Newton invested $250,002.47 in the Company, purchasing 50,917 Series A Shares pursuant to a February 24, 2021 Subscription Agreement.

93.    In reliance on Defendants' representations in the February Deck and the other written and oral discussions with Defendants referenced in paragraphs 64, 66, 67-69, 71-72, 77-79, 85, and 87, Fernandez invested in the Company's Series A Round.   Specifically, on March 6, 2021, Fernandez invested $250,002.47 in the Company, purchasing 50,917 Series A Shares pursuant to a March 6, 2021 Subscription Agreement.

94.    All four subscription agreements entered into by Cathexis, Page Angel Investors, Newton, and Fernandez provided that the investors' purchase of the

Company's shares was made in accordance with the Purchase Agreement, and each of the investors entered into and agreed to the Purchase Agreement by executing these subscription agreements.  The subscription agreements also provided that mIQroTech certified to each of Cathexis, Page Angel Investors, Newton, and Fernandez "that the representations and warranties of the Company contained in Section 2 of the Purchase Agreement are true and correct in all respects as of the date hereof."

95.     Under Section 2.14 of the Purchase Agreement, mIQroTech was required to provide investors with accurate financial information regarding the Company, including "a profit and loss statement for the period ended September 30, 2020" that "fairly present[s] in all material respects the operating results of the Company . . . ."

96.     Thus, the Company certified, *inter alia*, that it had provided Cathexis, Page Angel Investors, Newton, and Fernandez with an accurate profit and loss statement for the period ended September 30, 2020, pursuant to Section 2.14 of the Purchase Agreement.

97.     However, the only profit and loss statement Defendants provided to Cathexis, Page Angel Investors, and Newton (via Page Angel Investors) was the 2020 P&L Statement, which, as explained above, did not fairly or accurately present the Company's operating results.  The Company also failed to provide Fernandez

with an accurate profit and loss statement for the period ended September 30, 2020, as required by Section 2.14 of the Purchase Agreement.

**D.** **Defendants Solicit an Additional $3.25 Million from the Series A Investors in April and May 2021 Through False and Misleading Statements**

98.     Defendants' misrepresentations regarding mIQroTech's financial performance, customers, investors, and operations continued in the spring of 2021 as Defendants sought further investments in the Company.

99.     As set forth below, Kevin Minor and Cathexis ultimately relied on Defendants' continued false and misleading statements when they elected to invest (and further invest) in the Company in April and May 2021.

**1.** **Defendants Continue to Misrepresent mIQroTech's Financials**

100.    On or about April 13, 2021, Lewis provided and presented to Minor on a videoconference call a pitch deck dated April 12, 2021 (the "April Deck"). Fernandez joined Minor and Lewis on the videoconference call.  The April Deck was designed to solicit investment from Minor and other investors in connection with the Company's continuing Series A fund raising.

101.    The April Deck repeated many of the same false and misleading statements concerning mIQroTech's financial performance that Defendants had included in the October Deck and February Deck.

102.   Again, Defendants falsely stated that mIQroTech was currently billing $6.8 million in annual recurring revenue and that mIQroTech's "Actual" revenue for 2020 was $8.7 million.  On information and belief, the Company had nowhere near billings of $6.8 million or $8.7 million in revenue in 2020.

103.   Lewis also falsely stated that the Company's devices were deployed on thousands of miles of pipeline.

104.   Defendants also projected a massive increase in the Company's revenues going forward.  Specifically, Defendants stated that they expected the Company's revenues would increase to $22 million in 2021, $88 million in 2022 and $168 million in 2023.  On information and belief, Defendants did not have any reasonable basis for these projections and knew or should have known that the Company would not be able to achieve those revenue numbers.

105.   On or about May 27, 2021, Lewis and Friday spoke by phone.  During that call, Lewis represented that the Company had earned $13.8 million in revenue to date.  Lewis further stated that the Company projected 2021 revenue of at least $30 million and potentially as much as $50 million.  On information and belief, these statements were false and misleading, as the Company had not generated anywhere near $13.8 million in revenue to that date and Defendants knew, or were reckless in not knowing, that there was no reasonable basis to project $30-50 million in revenue for 2021.

### 2. **Defendants Continue to Misrepresent mIQroTech's Customers**

106.   While soliciting investments from Minor and Cathexis in or around April and May 2021, Defendants continued to misrepresent the size of mIQroTech's customer base.

107.   For example, the April Deck repeated Defendants' false representation that Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were all "Paying Customers."   Particularly given the Company's status as an early stage start-up company, information about the Company's customers—including who they were and the number of customers—was a material part of the Company's business.   Such information was therefore material to investors' assessment of the Company and represented important information that Minor and Cathexis relied on when assessing their potential investment in the Company.   On information and belief, Defendants' representations regarding the Company's customers were false and misleading.   Indeed, Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were not paying customers of mIQroTech in April 2021.

108.   The April Deck also falsely stated that the Company had letters of intent with "operators controlling over 300,000 miles" of pipeline.   On information and belief, this was also not true.

### 3.  Defendants Continue to Misrepresent That Chevron Invested in the Company's Series A Round

109.   Defendants also continued to falsely represent that Chevron was a Series A investor in mIQroTech.  For example, Defendants again represented in the April Deck that Defendants had "secured" funding in the Company's Series A raise from Chevron.

110.   Lewis also expressly represented to Minor that Chevron was investing in the Company.  On or about April 13, 2021, Lewis told Minor and Fernandez that Chevron had invested $2 million as part of the Company's Series A raise.

111.   In reality, and on information and belief, Chevron was never a Series A investor in the Company, and Defendants had not "secured" a financial investment from Chevron.

112.   At the time Defendants made these representations about Chevron's investment, Defendants knew, or were reckless in not knowing, that they were false and misleading.

113.   These false and misleading statements about Chevron investing in the Company were also material.  As a marquee oil and gas company, Chevron's purported investment in the Company acted as an imprimatur of legitimacy for the Company and its business prospects.  Indeed, given Chevron's stature in the oil and gas industry and its record of venture capital investment, Defendants made these misstatements for the purpose of inducing Minor, Cathexis, and other investors to

invest in the Company under the false pretense that Chevron had already vetted mIQroTech and determined it was a good investment.  Minor and Cathexis relied on those representations about Chevron when they invested in the Company.

### 4. Defendants Continue to Misrepresent mIQroTech's Product Roll Out

114.   While soliciting funds from Minor and Cathexis in April and May 2021, Defendants continued to misrepresent the status of mIQroTech's product development and roll out.

115.   For example, in the April Deck, Defendants again represented that mIQroTech was collecting hundreds of millions of data points daily from its devices.

116.   And on or about April 13, 2021, Lewis represented to Minor and Fernandez that the Company's devices had been deployed on thousands of miles of pipeline.

117.   Part of the Company's business model purported to rely on collecting and monetizing customer data, and therefore representations concerning the Company's data collection were material to prospective investors including Minor and Cathexis.

118.   On information and belief, contrary to the representations in the April Deck and Defendants other representations, mIQroTech's product was not fully developed and operating with customers.   Nor was mIQroTech collecting the customer "data" as described in the April Deck.

119.   The April Deck further represented that, by "January of 2022, mIQroTech will be generating 1.2 billion new data points every single day." However, on information and belief, Defendants had no basis to expect that level of data collection by January 2022.  This was particularly the case where the Company had collected little to no customer data at that point and had no reasonable estimate as to when it would have a viable product.

## 5.  <u>Minor and Cathexis Invest in the Company in Reliance on Defendants' Misrepresentations</u>

120.   Based on these representations and the other statements and representations referenced in paragraphs 102-105, 107-110, 115-116, and 119, Minor and Cathexis invested in mIQroTech.  On April 16, 2021, Minor invested $250,002.47 in the Company, purchasing 50,917 Series A Shares pursuant to an April 16, 2021 Subscription Agreement.  On May 28, 2021, Cathexis invested an additional $3,000,000.18 in the Company, purchasing 610,998 Series A Shares pursuant to a May 28, 2021 Subscription Agreement.

121.   These subscription agreements provided that Minor's and Cathexis's purchases of the Company's shares were made in accordance with the Purchase Agreement, and Minor and Cathexis entered into and agreed to the Purchase Agreement by executing these subscription agreements.

122.   The subscription agreements also provided that mIQroTech "certifies to [Minor and Cathexis] that the representations and warranties of the Company

contained in Section 2 of the Purchase Agreement are true and correct in all respects as of the date hereof."

123.   Under Section 2.14 of the Purchase Agreement, mIQroTech was required to provide investors with accurate financial information regarding the Company, including "a profit and loss statement for the period ended September 30, 2020" that "fairly present[s] in all material respects the operating results of the Company . . . ."

124.   Thus, the Company certified, *inter alia*, that it had provided Minor and Cathexis with an accurate profit and loss statement for the period ended September 30, 2020, pursuant to Section 2.14 of the Purchase Agreement.

125.   However, the only profit and loss statement Defendants provided Cathexis was the 2020 P&L Statement, which, as explained above, did not accurately or fairly present the Company's operating results.  The Company also failed to provide Minor with an accurate profit and loss statement for the period ended September 30, 2020, as required by Section 2.14 of the Purchase Agreement.

E.    **Defendants Solicit an Additional $1.25 Million in June 2021 Through False and Misleading Statements**

126.   Defendants' misrepresentations regarding mIQroTech's financial performance, customers, investors, and operations continued further into the middle of 2021.

127.   As set forth below, ShaDaySha and We Hang relied on Defendants' continued false and misleading statements when they invested in the Company in June 2021.

### 1.  Defendants Continue to Misrepresent mIQroTech's Financials

128.   On or about May 28, 2021, Lewis provided ShaDaySha a revised pitch deck, dated May 28, 2021 (the "May Deck").  ShaDaySha provided the May Deck to We Hang, and Lewis presented it to Scott Shaver, D. Blake Shaver, and Jeffrey Williams—members of ShaDaySha and We Hang—via videoconference on or about May 28, 2021.  The May Deck was designed to solicit investment from ShaDaySha, We Hang, and other investors in connection with the Company's continuing Series A fund raising.

129.   The May Deck repeated and expanded upon the same false and misleading statements concerning mIQroTech's financial performance that Defendants had included in the October Deck, February Deck, and April Deck.

130.   Again, Defendants falsely stated that mIQroTech's "Actual" revenue for 2020 was $8.7 million.  This time, however, Defendants also falsely stated that mIQroTech was currently billing $8.7 million in annual recurring revenue.  On information and belief, the Company did not have revenue in 2020 of $8.7 million.  Nor did the Company have billings of $8.7 million in annual revenue.

131.   Lewis also verbally represented these financials to ShaDaySha and We Hang during the May 28, 2021 videoconference.

132.   In addition, on May 25, 2021, Lewis emailed D. Blake Shaver and Scott Shaver of ShaDaySha and represented that mIQroTech's revenue for 2020 was $8.7 million.  This was false and misleading, as on information and belief the Company had nowhere near that amount of revenue in 2020.

133.   Defendants also baselessly projected 2021 revenues of $22 million.  In fact, on information and belief, Defendants knew, or were reckless in not knowing, that there was no realistic way the Company would achieve that level of revenue in 2021.

### 2.   Defendants Continue to Misrepresent mIQroTech's Customers

134.   While soliciting additional funds from ShaDaySha and We Hang in 2021, Defendants continued to misrepresent the size of mIQroTech's customer base.

135.   For example, the May Deck repeated Defendants' false representation that Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US were all "Paying Customers."  As explained, the existence of actual paying customers using the Company's product was a critical part of the Company's business, and this purported information about the Company's customers—including who they were and the number of customers—was a material part of investors' assessment of the Company.  Such information represented important

information that ShaDaySha and We Hang relied on when assessing its potential investment in the Company.

136.    On information and belief, however, these representations regarding the Company's "paying customers" was false, as those entities were not actually paying customers of mIQroTech in May 2021.

### 3. Defendants Continue to Misrepresent That Chevron Invested in the Company's Series A Round

137.    Defendants also continued to falsely represent that Chevron was a Series A investor in mIQroTech.  For example, Defendants again represented in the May Deck that Defendants had "secured" funding in the Company's Series A raise from Chevron.

138.    Defendants also continued to falsely represent that Chevron had invested in mIQroTech in communications with its other investors.  For example, in a July 22, 2021 email, Fernandez requested that Lewis provide him with an updated capitalization table for the Company.  In response, on July 29, 2021, Lewis sent Fernandez a capitalization table that indicated "Chevron Technology Ventures" invested $3 million in the Company.

139.    In reality, and on information and belief, Chevron was never a Series A investor in the Company, and Defendants never "secured" any financial investment from Chevron.

140.   At the time Defendants made these representations about Chevron's investment, Defendants knew, or were reckless in not knowing, that they were false and misleading.

141.   These statements about Chevron's purported investment in the Company were also material, particularly given Chevron's stature in the industry and the likelihood that investors would decide to invest in the Company under the false pretense that Chevron had already vetted mIQroTech and determined it was a good investment.

### 4.  **Defendants Continue to Misrepresent mIQroTech's Product Roll Out**

142.   While soliciting investments from ShaDaySha and We Hang, Defendants continued to misrepresent the status of mIQroTech's product development and roll out.

143.   For example, in the May Deck, Defendants represented that mIQroTech, as of January 2021, was collecting 1.2 billion new data points "every single day" from its devices.

144.   Lewis also orally represented to ShaDaySha and We Hang that the Company's devices were already deployed in the field.  Specifically, on the May 28, 2021 videoconference, Lewis represented that mIQroTech had devices deployed in the field and that the Company's device had recently alerted a customer that excavators were working near the customer's pipeline.  This anecdotal evidence

further provided the impression that customers were paying for and utilizing the Company's device to collect and interpret data.  In reality, and on information and belief, mIQroTech's devices were not in operation with customers in any material way at that time, and mIQroTech was not collecting the amount of customer "data" as described in the May Deck.

### 5. ShaDaySha and We Hang Invest in the Company in Reliance on Defendants' Misrepresentations

145.   In reliance on the misrepresentations and other communications referenced in paragraphs 129-132, 135, 137, and 143-144, ShaDaySha and We Hang invested in mIQroTech.  On June 1, 2021, ShaDaySha invested $1,000,000.06 in the Company, purchasing 203,666 Series A Shares pursuant to a June 1, 2021 Subscription Agreement.  Also on June 1, We Hang invested $250,000 in the Company, purchasing 50,917 Series A Shares pursuant to a June 1, 2021 Subscription Agreement.

146.   These subscription agreements provided that ShaDaySha's and We Hang's purchases of the Company's shares were made in accordance with the Purchase Agreement, and ShaDaySha and We Hang entered into and agreed to the Purchase Agreement by executing these subscription agreements.

147.   The subscription agreements also provided that mIQroTech "certifies to [ShaDaySha and We Hang] that the representations and warranties of the

Company contained in Section 2 of the Purchase Agreement are true and correct in all respects as of the date hereof."

148.  Under Section 2.14 of the Purchase Agreement, mIQroTech was required to provide investors with accurate financial information regarding the Company, including "a profit and loss statement for the period ended September 30, 2020" that "fairly present[s] in all material respects the operating results of the Company . . . ."

149.  Thus, the Company certified, *inter alia*, that it had provided ShaDaySha and We Hang with an accurate profit and loss statement for the period ended September 30, 2020, pursuant to Section 2.14 of the Purchase Agreement.

150.  The Company failed to provide ShaDaySha or We Hang with an accurate profit and loss statement for the period ended September 30, 2020, as required by Section 2.14 of the Purchase Agreement.

**F.  Laflin Invests in the Company in Reliance on Defendants' Misrepresentations**

151.  In connection with his role as a sometime adviser to the Company, Laflin entered stock option award agreements with the Company with grant dates of October 9, 2020 and July 13, 2021 (the "Stock Option Agreements").  Pursuant to the Stock Option Agreements, Laflin was provided the option to purchase a certain amount of shares of the Company.

152.   In reliance on the various misrepresentations made by Defendants described in paragraphs 31-32, 34, 36, 38, 39, 41-42, 47-48, 50, 53, 64, 66-69, 71-72, 77-78, 80, 85, and 87, Laflin elected to exercise his options to acquire additional shares in the Company pursuant to the Stock Option Agreements and, on or about September 10 and 16, 2021, invested an additional $217,878, purchasing 130,466 shares of the Company.

### G.   Defendants Failed to Provide Required Financial Information

153.   Defendants consistently failed to provide financial information to investors.   During the period after the Series A Investors each invested in the Company, Defendants never provided the Series A Investors with adequate information regarding the Company's financials.   Indeed, during 2021, Lewis would periodically provide purported updates to the Series A Investors, but such updates were filled with exaggerated claims regarding the Company's current and prospective business and failed to include actual, accurate financial information regarding the Company's operations.   Defendants refused to provide any audited or unaudited financials of the Company to the Series A Investors, despite repeated requests.

154.   The Company also failed to provide financial information to certain of the Series A Investors as required under the Investors' Rights Agreement.

155.   Under Section 3.1 of the Investors' Rights Agreement, the Company is required to provide investors who hold at least 100,000 shares with various financial information, including quarterly unaudited statements of income and cash flows, quarterly unaudited balance sheets, and quarterly statements showing the number of shares of each class and series of capital stock and securities convertible into or exercisable for shares of capital stock outstanding.

156.   Cathexis, Page Angel Investors, and ShaDaySha all hold over 100,000 shares of Company stock.

157.   In the time period after Cathexis, Page Angel Investors, and ShaDaySha invested in the Company and each held over 100,000 shares of the Company, Defendants failed to provide Cathexis, Page Angel Investors, or ShaDaySha with any of the financial information required under Section 3.1 of the Investors' Rights Agreement.

## H.   **Defendants' Fraudulent Scheme Unravels**

158.   During the summer and fall of 2021, Defendants increasingly scrambled to maintain the illusion of a revenue generating Company with real paying customers and a viable product successfully deployed in the field.

159.   In or around July or August 2021, Lewis set his sights on a Series B round of funding for the Company, in the hope of raising additional capital.

160.   Based on the incredibly rosy (though false) picture of the Company provided by Defendants, several of the Series A Investors indicated interest in investing further in the Company and requested additional information regarding the Company's finances.

161.   On August 11, 2021, for example, Friday emailed Lewis requesting access to the Company's data room that it was purportedly setting up to support a Series B fund raising.

162.   Friday explained that Cathexis wanted to "start taking a look for possible follow on investment" and that Cathexis would "[n]eed to see latest pitch deck, projected financials, historical financials (P&L, balance sheet), customer contracts, employee list, cap table, etc . . . all the standard diligence stuff."

163.   On August 12, 2021, Lewis told Friday he was "still in the process of building out the data room" but sent him a new "pitch deck for this raise" (the "August Deck").

164.   The August Deck, like the October Deck, February Deck, April Deck, and May Deck, contained a number of false and misleading statements.

165.   For example, the August Deck continued to identify Marathon, Equitrans, EQT, Maverick Natural Resources, Acciona, and Delek US as "Paying Customers."   However, on information and belief, Marathon, Equitrans, EQT,

Maverick Natural Resources, Acciona, and Delek US were not paying customers of mIQroTech at that time.

166.   The August Deck further stated that the Company was "currently billing $22MM ARR."  On information and belief, this was also false.

167.   The August Deck also represented, consistent with the February Deck, April Deck, and May Deck that the Company's "Actual Pipeline Monitoring Revenue" in 2020 was $8.7 million.  On information and belief, the actual revenue in 2020 was nowhere near that amount.

168.   The August Deck also boasted about two new partnerships that the Company had entered into with Lloyd's Register and Sumitomo Corporation, which Defendants represented would "guarantee" the Company $150 million and $30 million in revenue, respectively, in 2021.  On information and belief, this was false or, at best, misleading.

169.   On or around August 12, 2021, Lewis spoke via Google Meets with Friday to answer Friday's questions about who had invested in the Company.  Lewis purported to read from the Company's capitalization table and told Friday that Republic had invested $1 million, Chevron had invested $2 million, and that the total Series A raise was $10.9 million.  On information and belief, this was false, as neither Republic nor Chevron ever invested in mIQroTech, and the Company's Series A raise did not obtain $10.9 million in investment.

170.   Cathexis and other potential Series B investors continued to ask for diligence materials concerning the Company's financials.  Throughout August and September, however, Lewis consistently dodged these requests and refused to provide Cathexis and other Series A Investors with basic information regarding the Company's business, such as copies of mIQroTech's contracts with its purported customers and partners.

171.  Cathexis and the other investors grew increasingly troubled by Defendants refusal to provide basic financial information about the Company.  On August 25, 2021, Friday asked Lewis for documentation about the Series A investors, including "Chevron."   Lewis misleadingly responded that Chevron's paperwork was "missing" and represented that he would "find" it.  As Lewis later admitted, Chevron was never an investor in the Company, and Lewis was only being deceptive when he purported to look for Chevron's "missing paperwork."

172.   Even when Defendants made a limited number of customer contracts available, they were missing basic information, like customer signatures.  This only raised more questions regarding the accuracy of Defendants' representations regarding the Company's customers and financial performance.

173.   On September 1, 2021, Lewis spoke with Friday again via Google Meets and again represented to Friday that the Company's Series A round had raised over $10 million.

174.    Faced with increasing pressure from Cathexis and other investors to provide evidence of the Company's financial results and in an effort to position the Company for further fund raising, Lewis hired John Cavitt, an executive with experience in the oil and gas industry.

175.    Lewis hired Cavitt in or about the first week of October to help prepare the Company for a potential Series B funding round.

176.    On information and belief, Cavitt requested copies of the Company's financials and basic diligence materials to assist with this new role.

177.    On information and belief, Lewis declined to share this information with Cavitt.

178.    By the end of October, on information and belief, Cavitt learned that the Company did not have any products deployed with any customers in the field, that the Company was not collecting any customer data, and that the Company had generated no more than $250,000 in revenue since its inception.

179.    In late October 2021, senior executives and advisors to the Company voiced concern regarding the accuracy of Lewis' representations regarding the Company's financial performance and prospects.

180.    Specifically, on or about October 25, 2021, Lewis had a meeting with senior Company personnel, including four members of the Company's "Board of Directors"—Jeff Brashear, Gary Weiss, Paul Silvis, and Don Bortniak.    On

information and belief, Lewis consistently represented to the Series A investors and others that Brashear, Weiss, Silvis and Bortniak were members of the Company's board of directors.   However, on information and belief, they were not actually directors of the Company and acted only in an advisory role with no actual governance role or authority.   During the meeting on or about October 25, 2021, Lewis was questioned about his false representations of the Company's financial performance, development of the product, and likely future prospects.

### I.   Lewis Confesses to Making Material Misstatements and Misleading Investors

181.   Shortly thereafter, a number of the Company's senior employees, including Weiss, Tonya Garr (the Company's Executive Vice President of Sales), and Cavitt, confronted Lewis during a video conference, accusing him of misrepresenting the Company's revenue and product development to investors.   On information and belief, Lewis admitted that he had made misstatements and misled investors while soliciting their investment in mIQroTech.

182.   On information and belief, Weiss, Silvis, and Bortniak met with Lewis during the week of November 1 and demanded that Lewis provide them with copies of the Company's financials, which apparently they did not have access to or did not believe they had accurate information about.

183.   On information and belief, Lewis refused, and, on November 3, Weiss resigned from his role at the Company.

184.   Faced with mounting pressure from his employees, senior advisors, and investors, Lewis decided to come clean regarding all of his misstatements and misrepresentations to investors.

185.   Accordingly, Lewis prepared an apology to the Company's investors in which he admitted to making false and misleading statements to induce them to invest in the Company.

186.   Specifically, on information and belief, on November 4, 2021, Lewis met with senior executives of the Company including Brashear (the Company's Chief Strategy Officer), Mike Kaiser (the Company's Chief Information Officer), Garr, Cavitt, and at least one Series A investor, Kevin Minor.  During the meeting, Lewis confessed to making numerous false statements to investors regarding the Company's revenue and operations.

187.    Lewis expressly acknowledged the false statements in the pitch decks that accompanied the Series A raise.

188.   In particular, Lewis admitted the statements concerning "contracted revenue in 2020 of $8.7M" was false and misleading.  Lewis also conceded that the representation of the Company having "currently billed revenue of over $6M" was not accurate.  He also admitted that the representations about Chevron being an investor were false.

189.   Lewis also acknowledged that the revenue he had represented and promised to investors "has not materialized."

190.   He confessed that mIQroTech "ha[s] been unable to bill any of the revenue" that was included in the Series A pitch decks.  He further admitted that "[w]e don't have actual revenue billings."

191.   Lewis also admitted that he has misrepresented the development and deployment of the Company's product.  Specifically, he conceded that "[w]e don't currently have deployed devices on pipelines."

192.   Lewis also came clean regarding his prior misrepresentations about Chevron being an investor, admitting that "Chevron . . . didn't make it to closing."

193.   During his confession, Lewis repeatedly broke down and cried.  He clearly understood the magnitude of his fraudulent conduct.  Indeed, he stated that he understood that his "revelation" changed the facts that the investors considered when they invested in the Company.

194.   Lewis further admitted he was at "fault" with regard to all his misrepresentations to investors.

195.   In an effort to stave off the consequences of his misconduct, Lewis proposed various concessions to the Company's investors, including increasing the investors' shares in the Company with corresponding reduction in shares owned by

Lewis as well as implementing additional governance protections for the Series A Investors.

196.   On information and belief, Lewis intended to repeat his confession to all of the Series A investors on a call that he scheduled for the next day on November 5, 2021.

197.   On November 5, 2021, prior to the scheduled call, Lewis sent a text message to Laflin indicating that "the message today is going to be tough.  I am sorry about what I am going to be sharing."  Laflin asked Lewis what he meant, and Lewis responded: "Meade Fucked Up."

198.   However, Lewis abruptly canceled the planned meeting with the other Series A investors.  He also fired Cavitt on November 5, 2021.  On information and belief, Lewis also told Company staff that he would not offer any further apology for his misconduct.

199.   In a subsequent phone call with Laflin that occurred on November 5, 2021, Lewis confirmed that the Company did not have any product in the field collecting customer data.  He also admitted that Chevron was never a Series A investor in the Company.

200.   On November 12, 2021, the Series A Investors demanded that Lewis step down immediately from his management role with the Company.  Cathexis also asked Lewis and the Company to provide accurate financial information regarding

the Company, including information that Cathexis, Page Angel Investors, and ShaDaySha are entitled to, based on their share holdings, under Sections 3.1 of the Investors' Rights Agreement.

201.  Under Section 3.1 of the Investors' Rights Agreement, the Company is required to provide investors who hold at least 100,000 shares with various financial statements, including quarterly unaudited statements of income and cash flows, quarterly unaudited balance sheets, and quarterly statements showing the number of shares of each class and series of capital stock and securities convertible into or exercisable for shares of capital stock outstanding.  Under Section 3.1(e), the Company is required to provide investors who hold at least 100,000 shares with additional financial information that they may reasonably request from time to time. Cathexis, Page Angel Investors, and ShaDaySha each hold more than 100,000 shares of the Company and accordingly have the right to acquire and examine such financial statements.

202.  Lewis refused to step down, and Defendants refused to produce the requests for information about the Company.  Defendants have continued to engage in fraudulent misconduct that continues to harm the Series A Investors, including by continuing to misrepresent the Company's financial performance, the development of the Company's product, and the Company's future prospects.

203.   As of early November 2021, on information and belief, the Company had approximately $4 million in cash in its accounts.  However, particularly based on Lewis's prior conduct, there is a significant risk that Lewis may seek to improperly transfer, dissipate, or dispose of the Company's cash and its other valuable assets, including intellectual property.   The Series A Investors have specifically warned Lewis and the Company not to transfer, liquidate, dissipate, or assign any assets of the Company, including the Company's cash and intellectual property.

## COUNT I
### (Fraud by mIQroTech and Lewis)

204.   Plaintiffs repeat and reallege the allegations of paragraphs 28-93, 100-120, 128-145, 151-152, and 158-199 as if fully set forth herein.

205.   Count I pertains to both Lewis in his personal capacity and in his capacity as president and CEO of the Company.

206.   Defendants knowingly, intentionally, or with reckless indifference to the truth made, disseminated, or caused to be disseminated materially false and misleading statements and concealed material facts in order to induce Plaintiffs to invest in mIQroTech.

207.   Specifically, Defendants misled investors and made false statements regarding the amount of the Company's revenues, the number of customers the

Company had, the existence of Chevron as an investor, and the extent to which mIQroTech's product was developed and deployed in the field.

208.   Defendant's false and misleading statements were made with the intent that Plaintiffs and other investors would rely on such statements and to induce Plaintiffs and other investors to invest in mIQroTech.

209.   Plaintiffs relied on Defendants' false and misleading statements referenced in paragraphs 31-32, 34, 36, 38-39, 41-42, 47-48, 50, 53, 64, 66-69, 71-74, 77-80, 85, 87, 102-105, 107-110, 115-116, 119, 130-133, 135, 137-138, and 143-144, and invested over $7 million in mIQroTech.

210.   Had Plaintiffs known the truth regarding the material facts Defendants misrepresented, Plaintiffs would not have made their investments in mIQroTech.

211.   As a direct and proximate result of Defendants' false and misleading statements, Plaintiffs have suffered damages to be proven at trial.

## COUNT II
### (Negligent Misrepresentation by mIQroTech and Lewis)

212.   Plaintiffs repeat and reallege the allegations of paragraphs 28-93, 100-120, 128-145, 151-152, and 158-199 as if fully set forth herein.

213.   Count II pertains to both Lewis in his personal capacity and in his capacity as president and CEO of the Company.

214.   Defendants negligently made, disseminated, or caused to be disseminated materially false and misleading statements in order to induce Plaintiffs to invest in mIQroTech.

215.   Specifically, Defendants negligently misled investors and made false statements, or statements that Defendants should have known were false, regarding the amount of the Company's revenues, the number of customers the Company had, the existence of Chevron as an investor, and the extent to which mIQroTech's product was developed and deployed in the field.

216.   Defendants owed Plaintiffs a duty to provide correct information. Defendants possessed unique information about the Company, and Lewis, as the Chief Executive Officer, director, and majority shareholder of mIQroTech, was uniquely situated to evaluate and report on the financial performance of the Company.  Lewis also presented himself as a former executive of oil and gas firms so that Plaintiffs would depend on his industry expertise.  Defendants had financial as well as professional incentives for securing the Plaintiffs' funding.

217.   Defendants' false and misleading statements were made to Plaintiffs knowing that Plaintiffs required accurate information to assess whether it was financially appropriate to invest large sums of money into the Company. Defendant's false and misleading statements were made with the intent that

Plaintiffs and other investors would rely on such statements and to induce Plaintiffs and other investors to invest in mIQroTech.

218.   Plaintiffs relied on Defendants' false and misleading statements referenced in paragraphs 31-32, 34, 36, 38-39, 41-42, 47-48, 50, 53, 64, 66-69, 71-74, 77-80, 85, 87, 102-105, 107-110, 115-116, 119, 130-133, 135, 137-138, and 143-144 when they invested in mIQroTech.

219.   Had Plaintiffs known the truth regarding the material facts Defendants misrepresented, Plaintiffs would not have made their investments in mIQroTech.

220.   As a direct and proximate result of Defendants' false and misleading statements, Plaintiffs have suffered damages to be proven at trial.

## COUNT III
### (Breach of Purchase Agreement by mIQroTech)

221.   The Series A Investors repeat and reallege the allegations of paragraphs 31, 38-39, 54-55, 94-97, 121-125, and 146-150 as if fully set forth herein.

222.   The Series A Investors and mIQroTech are parties to the Purchase Agreement, which the Series A Investors entered into and agreed to directly and/or by executing the subscription agreements as described above.

223.   The Purchase Agreement and subscription agreements are binding and enforceable contracts that were supported by valid consideration.

224.   Under Section 2.14 of the Purchase Agreement, as a condition for each of the Series A Investors to invest in the Company, mIQroTech was required to

provide each of the Series A Investors certain financial information, including "a profit and loss statement for the period ended September 30, 2020" (the "Profit & Loss Statement") that "fairly present[s] in all material respects the operating results of the Company . . . ."

225.   The Series A Investors have fully performed and complied with all of their obligations under the Purchase Agreement and subscription agreements.

226.   Defendant mIQroTech has materially breached the Purchase Agreement, including by failing to provide an accurate Profit & Loss Statement as required under Section 2.14.  In particular, mIQroTech breached Section 2.14 by not providing a Profit & Loss Statement to Fernandez, Minor, ShaDaySha, or We Hang and providing Cathexis, Page Angel Investors, and Newton (via Page Angel Investors) with the 2020 P&L Statement, which did not fairly or accurately present the Company's operating results.  As explained above in paragraphs 31, and 38-39, the 2020 P&L Statement included purported income during the period between January and November 2020 from six clients in an amount of $4,127,050 when, on information and belief, mIQroTech did not generate that amount of income from those clients in 2020.

227.   As a result of mIQroTech's material breaches of the Purchase Agreement, the Series A Investors have suffered damages to be proven at trial.

228.   Section 7.9 of the Purchase Agreement also provides that: "If any action

at law or in equity . . . is necessary to enforce or interpret the terms of [the Purchase Agreement], the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled." Accordingly, the Series A Investors are also entitled to attorney's fees, costs and any necessary disbursements in connection with enforcing their rights under the Purchase Agreement.

## COUNT IV
### (Breach of Investors' Rights Agreement by mIQroTech)

229.   Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha repeat and reallege the allegations of paragraphs 154-157 and 200-202 as if fully set forth herein.

230.   Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha and Defendant mIQroTech are parties to the Investors' Rights Agreement, which Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha entered into and agreed to directly and/or by executing the subscription agreements as described above.

231.   The Investors' Rights Agreement is a binding and enforceable contract that was supported by valid consideration.

232.   Under Section 3.1 of the Investors' Rights Agreement, mIQroTech is required to provide investors who hold at least 100,000 shares with various financial statements, including quarterly unaudited statements of income and cash flows, quarterly unaudited balance sheets, and quarterly statements showing the number of

shares of each class and series of capital stock and securities convertible into or exercisable for shares of capital stock outstanding.   Under Section 3.1(e), the Company is required to provide investors who hold at least 100,000 shares with additional financial information that they may reasonably request from time to time.

233.   Defendant mIQroTech materially breached Section 3.1 of the Investors' Rights Agreement by failing to provide required quarterly financial statements to Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha, who all hold over 100,000 shares in the Company.

234.   Defendant mIQroTech further materially breached Section 3.1(e) of the Investors' Rights Agreement by refusing to provide the financial information Cathexis requested on November 12, 2021.

235.   As a result of mIQroTech's material breaches of the Investors' Rights Agreement, Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha have suffered damages to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment and relief against Defendants as follows:

A.    On Count I, awarding Plaintiffs money damages, in an amount to be proven at trial, sufficient to compensate them for all forms of loss, without limitation, actual damages, incidental damages, consequential damages, lost profits, lost goodwill, punitive damages, and other costs and damages they have and will incur by reason of Defendants' fraud;

B.   On Count II, awarding Plaintiffs money damages, in an amount to be proven at trial, sufficient to compensate them for all forms of loss, without limitation, actual damages, incidental damages, consequential damages, lost profits, lost goodwill, punitive damages, and other costs and damages they have and will incur by reason of Defendants' negligent misrepresentations;

C.   On Count III, awarding the Series A Investors money damages, in an amount to be proven at trial, sufficient to compensate them for all forms of loss, without limitation, actual damages, incidental damages, consequential damages, lost profits, lost goodwill, and other costs and damages they have and will incur by reason of mIQroTech's breaches of the Purchase Agreement;

D.   On Count IV, awarding Plaintiffs Cathexis, Page Angel Investors, and ShaDaySha money damages, in an amount to be proven at trial, sufficient to compensate them for all forms of loss, without limitation, actual damages, incidental damages, consequential damages, lost profits, lost goodwill, and other costs and damages they have and will incur by reason of mIQroTech's breaches of the Investors' Rights Agreement;

E.   Awarding Plaintiffs their attorneys' fees, costs and expenses incurred in connection with this litigation, including pursuant to Section 7.9 of the Purchase Agreement, the Investors' Rights Agreement, and applicable law;

F.   Awarding Plaintiffs prejudgment and post-judgment interest to the extent authorized by law; and

G.   Granting such other, further and different relief as the Court may deem just and proper together with the costs and expenses for this action.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: December 3, 2021          Respectfully submitted,

**WHITE & CASE LLP**
200 South Biscayne Blvd., Ste. 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700

By: /s/ *James N. Robinson*

**James N. Robinson**
Florida Bar No. 608858
jrobinson@whitecase.com

**Zachary B. Dickens**
Florida Bar No. 98935
zdickens@whitecase.com

**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200

**Gregory Starner**
*(Pro Hac Vice Admission Pending)*
gstarner@whitecase.com

**Jackson Herndon**
*(Pro Hac Vice Admission Pending)*
jackson.herndon@whitecase.com

**Wyatt R. Smith**
*(Pro Hac Vice Admission Pending)*
wyatt.smith@whitecase.com

*Counsel for Plaintiffs Cathexis Ventures, LP, Joaquin Alex Fernandez, Thomas Alex Newton, Jr., Page Angel Investors II, LLC, George Laflin, Kevin Minor, We Hang, GP, and ShaDaySha, LLC*